This is a constitutional challenge to the Alabama tax on insurance premiums brought as a result of the recent ruling of the United States Supreme Court in the case of Western andSouthern Life Insurance Co. v. State Board of Equalization,451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981).
Section 27-4-4, Code of Alabama 1975, imposes a premium tax on "foreign insurers" at a rate higher than the rate imposed on "domestic insurers" engaged in the same type of insurance business in this state. Section 27-4-1 (2) defines "foreign insurer" as any insurance company not incorporated in Alabama and not having its principal office or chief place of business in Alabama. The law imposes a tax rate of four percent (4%) on the premiums collected by foreign property and casualty insurers and three percent (3%) on the premiums collected by foreign life insurers. § 27-4-4, Code 1975. In contrast, the tax rate for domestic insurers is one percent (1%) for both life and property-casualty companies. In addition, § 27-4-4 (b) provides a progressive deduction from the tax rate for defined capital investments by the foreign insurer in Alabama. Appellants contend that the discriminatory tax rate on foreign insurers is an unconstitutional denial of their fourteenth amendment right to equal protection of the laws.
The appellants in this case are thirty-nine insurance companies, classified as foreign insurers under Alabama law, which have *Page 537 
paid their annual premium taxes for each year they have done business in Alabama. In 1981 each foreign insurer paid its premium taxes (where applicable) under protest and filed petitions for refunds for taxes paid for certain open years, alleging that the Alabama discriminatory tax scheme was unconstitutional. The Alabama Commissioner of Insurance denied the petitions, and the foreign insurers filed Notices of Appeal with the Commissioner. Each foreign insurer filed a separate complaint in the Circuit Court of Montgomery County, appealing the Commissioner's decisions and seeking a declaratory judgment as to the constitutionality of the Alabama premium tax classification scheme and a writ of mandamus, or such other remedy as the court deemed appropriate, requiring the Commissioner to refund the premium taxes collected under the statute. The separate cases were consolidated for trial and it was agreed that two cases, those involving Metropolitan Life Insurance Company and the Prudential Property and Casualty Insurance Company, would go to trial and the findings in those cases would control all of the other cases.
Metropolitan paid taxes for the years 1977-80 at the rates imposed on foreign life insurers under the provisions of §27-4-4, Code 1975. Prudential paid taxes at the rates imposed on foreign property and casualty insurers for 1977. Each claimed and were allowed credit for investments under § 27-4-4
(b). Both Metropolitan and Prudential filed timely petitions for refunds of taxes paid, as authorized by § 27-4-11, Code 1975. The petitions were denied by the State on July 8, 1981. Appeal was taken to the circuit court pursuant to § 27-2-32, Code 1975.
Several domestic insurers filed motions in the circuit court to intervene as defendants. The motions were granted. Cross motions for summary judgment were made and heard. On May 17, 1982, the court granted summary judgment to the State. The foreign insurer's motion for a new trial was denied. This appeal followed.
In the circuit court all parties agreed that the case would be governed by the recent Supreme Court decision in Western andSouthern Life Insurance Co. v. State Board of Equalization,supra. Western and Southern did not deal with discriminatory tax rates of the nature involved in this appeal. Instead, it dealt with a retaliatory tax, i.e., a tax which imposes the same rate on foreign insurers that is being assessed against the taxing state's domestic insurers by the foreign insurer's state of domicile, when that rate is greater than the standard rate imposed by the taxing state on foreign insurers. Alabama has such a tax, § 27-3-29, Code of Alabama 1975, but it is not challenged here. The court in Western and Southern ruled that the retaliatory tax did not violate equal protection principles.
The first important holding in Western and Southern is: (1) the Commerce Clause does not apply to the insurance business under the McCarran-Ferguson Act (15 U.S.C.A. § 1012 (West 1976)); (2) the Privileges and Immunities Clause does not apply to corporations (see Hemphill v. Orloff, 277 U.S. 537,48 S.Ct. 577, 72 L.Ed. 978 (1928)); and therefore (3) only the Equal Protection Clause remains as a restriction upon the states' power to tax the insurance business. 101 S.Ct. at 2077. Thus we shall limit our federal constitutional examination of the Alabama taxing scheme to equal protection arguments.
The second holding of Western and Southern was that the case of Lincoln National Life Insurance Co. v. Read, 325 U.S. 673,65 S.Ct. 1220, 89 L.Ed. 1861 (1945) was overruled. That case held that states may impose taxes on foreign corporations for the "privilege" of doing business in the state, even where the tax had no rational or legitimate state purpose other than raising revenue. In overruling Lincoln National the court said:
 "In view of the decisions of this Court both before and after Lincoln National, it is difficult to view that decision as other than an anachronism. We consider it now established that, whatever the extent of a State's authority to exclude *Page 538 
foreign corporations from doing business within its boundaries, that authority does not justify imposition of more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose."
101 S.Ct. at 2083.
Thus, classification of the Alabama premium tax as a "privilege" tax will not save it from constitutional attack; it must withstand equal protection analysis. That analysis requires that two questions be answered affirmatively. Vance v.Bradley, 440 U.S. 93, 97-98, 99 S.Ct. 939, 943, 59 L.Ed.2d 171
(1979). First, does the discriminatory tax have a legitimate state purpose? Second, was it reasonable for the Alabama legislature to believe that use of the foreign/domestic classification would promote that purpose? 101 S.Ct. at 2083.
In granting summary judgment for the State, the court found that the tax had at least two legitimate purposes, in addition to raising revenue: (1) encouraging the formation of new insurance companies in Alabama; and (2) encouraging capital investment by foreign insurance companies in Alabama assets and governmental securities. The court also found, based on affidavits of experts in the insurance field presented by both sides, that it was reasonable for the legislature to believe that the statute's classification would promote those purposes. The foreign insurers contend the court erred in both findings and, thus, in the granting of the motion for summary judgment.
On appeal from summary judgment, "we must determine whether there exists any genuine issue of material fact and, if not, whether the substantive law was correctly applied to undisputed facts." Watts Construction Co. v. Cullman County,382 So.2d 520, 522 (Ala. 1980). We shall first consider the question of whether the trial court was correct in finding legitimate state purposes for the discriminatory tax.
At the trial, the State presented a list of conceivable legitimate state purposes for its premium tax policy, with supporting affidavits of experts in the field of insurance. The domestic insurers, as defendant/intervenors, presented four additional purposes. The foreign insurers contend that it was error for the trial court to consider these lists, because the legislature specifically stated its purpose. The foreign insurers contend that the only purpose stated by the legislature is found in the last legislative pronouncement dealing with the premium tax before adoption of the 1975 Code of Alabama, i.e., Act of October 1, 1971, No. 2106, 1971 Ala. Acts 3375; that being "to raise revenue." Therefore there is no basis for considering other possible purposes.
The law is clear that the party attacking a statute has the burden of overcoming the presumption of constitutionality and must negate every conceivable or reasonable basis which might support the classification. Thorn v. Jefferson County,375 So.2d 780 (Ala. 1979). "[A] statutory discrimination should not be set aside if any state of facts reasonably may be conceived to justify it." Id. citing McGowan v. Maryland, 366 U.S. 420,81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
The foreign insurers contend that neither of the purposes found by the court are constitutionally legitimate. The constitutional legitimacy of the purpose of suspect legislation, once such purpose is shown must be a question of law. The Supreme Court has said that the location or promotion of a needed or useful industry within the state is a legitimate state purpose, as well as efforts to maintain the profit level of a domestic industry. See Parker v. Brown, 317 U.S. 341,63 S.Ct. 307, 87 L.Ed. 315 (1943), Pike v. Bruce Church, Inc.,397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).
The foreign insurers argue that promotion of domestic industry is a legitimate state purpose only when it deters barriers to interstate commerce. They claim the Alabama statute is a barrier to interstate commerce, and is therefore *Page 539 
unconstitutional. This is a commerce clause argument, and most of the cases cited by the foreign insurers in support thereof are commerce clause cases. See, e.g., Pike v. Bruce Church,Inc., supra, and Parker v. Brown, supra. However, commerce clause limitations do not apply to the business of insurance. McCarran-Ferguson Act, supra. We therefore affirm the trial court's finding of at least two legitimate purposes of the discriminatory tax: (1) encouraging the formation of domestic insurance companies in Alabama; and (2) encouraging capital investment by foreign insurance companies in Alabama.
The foreign insurers also contend that the statute violates the equal protection doctrine of the Alabama Constitution, found in Ala. Const. art. I, §§ 1, 6, 22, and 35. The Alabama Supreme Court has analyzed equal protection under the Alabama Constitution identically to the analysis under the federal constitution in Tyson v. Johns-Manville Sales Corp.,399 So.2d 263 (Ala. 1981). Considering this case in like manner, we find that the tax on foreign insurance companies does not violate the equal protection doctrine of the Alabama Constitution.
The foreign insurers also contend that the trial court committed reversible error by granting summary judgment on the issue of whether it was reasonable for the legislature to believe that the use of the foreign/domestic classification would promote the legitimate purposes found by the court. They contend that such reasonableness was an issue of material fact placed in dispute by the affidavits of the various experts. The Supreme Court of Alabama has stated the scope of review of appellate courts on appeal from summary judgment in Ryan v.Charles Townsend Ford, Inc., 409 So.2d 784, 786 (Ala. 1981):
 "It is a long-established rule in this state that on motions for summary judgment, the movant has the burden of negating the existence of any issue of material fact; Plant v. Reid, Inc., 365 So.2d 305
(Ala. 1978); Worley v. Worley, 388 So.2d 502
(Ala. 1980), and if there is a scintilla of evidence supporting the nonmoving party, summary judgment is inappropriate. Studdard v. South Central Bell Tel. Co., 356 So.2d 139 (Ala. 1978). In determining the existence of genuine issues of material fact, the record must be viewed by this Court in a light most favorable to the non-moving party. Papastefan v. B L Const. Co., Inc. of Mobile, 356 So.2d 158
(Ala. 1978)."
The burden of proof on the State was indeed great on its motion for summary judgment. If the evidence presented "a mere gleam, glimmer, spark, the least particle, the smallest trace, a scintilla, in support of the theory of the complaint,"Alabama Power Co. v. Scholz, 283 Ala. 232, 237, 215 So.2d 447,450 (1968), the grant of the motion for summary judgment was improper.
The State's burden of proof on motion for summary judgment is complicated by the foreign insurer's burden of proof in challenging the constitutionality of a statute. When questioning the legislative judgment, the court is "restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it." UnitedStates v. Carolene Products Co., 304 U.S. 144, 154,58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938). Thus, if the question is at least debatable, the legislative judgment must be sustained.Id. "[T]hose challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Vancev. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 950, 59 L.Ed.2d 171
(1979). The wisdom of the legislation or whether in fact it will accomplish its purpose is not the question. Ferguson v.Skrupa, 372 U.S. 726, 729, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93
(1963). It was apparently on the proposition that the reasonableness of the legislative judgment was shown to be at least debatable that the court granted the State's motion for summary judgment. *Page 540 
Contrasting the burden of proof placed upon the constitutional challengers of a statute to that upon the party moving for summary judgment results in a conflict of the burdens of proof which is difficult to resolve. It is the opinion of the court that the presumption of constitutionality afforded legislative enactments was not intended to prevent the full factual development of the challenge of the rationality of the action of the legislature in pursuing its stated or conceivable purpose.
The Alabama Supreme Court spoke somewhat to this issue inThorn v. Jefferson County, supra. In this case the constitutionality of a statute was also being questioned; the trial court had granted a motion to dismiss. Justice Maddox, writing for the majority, said:
 "In order to sustain the grant of the motion to dismiss, we would have to take judicial notice that the Legislature had a rational basis upon which to base its classification in this statute. This we cannot do. The taxpayers have alleged that the classification is arbitrary and capricious. They have the burden to prove this, but they are at least entitled to have their day in court."
In viewing the record in the light most favorable to the foreign insurers, Ryan, supra, we must hold that the trial court erred in denying the foreign insurers the opportunity to fully present their evidence at trial. If such were not permitted, a mere scintilla of evidence causing the issue of reasonableness to be debatable could result in summary judgment for the movant and cut off further testimony. The scintilla rule is to prevent summary judgment, not aid it. There is nothing recorded which discloses that the evidence of the non-moving party in this case is complete. At least the opportunity to present further evidence should not be foreclosed without such disclosure.
We reverse the granting of summary judgment in favor of the State because there is presented an issue of fact on the question of whether the legislature could have rationally believed that enactment of the discriminatory tax would promote the legitimate State purposes. The result of this reversal is that the entire judgment below may be reviewed if deemed necessary by introduction of additional testimony. The trial court, if so inclined, could open the matter for further consideration of conceivable legitimate state purpose.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH DIRECTIONS.
BRADLEY and HOLMES, JJ., concur.