This is an ad valorem tax assessment case.
Appellee, Colonial Pipeline Company (Colonial), is a corporation duly organized under the laws of Delaware and is qualified to do business in the State of Alabama. Colonial is engaged in the interstate transportation of refined petroleum products by pipeline to and through Alabama as well as other points in a fourteen-state region. Colonial's property, subject to ad valorem taxes in Alabama, consists primarily of pipelines and operating tankage which are all dedicated to and used solely and exclusively in interstate commerce.
On June 4, 1982, the Alabama Department of Revenue (Department)[1] issued notice to Colonial for the 1982 tax year of a tentative valuation for ad valorem tax purposes in the amount of $22,800,000 on Colonial's property located in Alabama. This assessment reflects the use of a thirty percent (30%) assessment factor applied by the Department to ninety percent (90%) of the market value of the property based on the characterization of such property as Class I property.
The Department scheduled a hearing and notified Colonial. Colonial filed a written protest against the tentative assessment proposed by the Department. The Department overruled the protest and entered a tax assessment of $725,000 based upon a property valuation of $22,800,000.
Colonial appealed to the Circuit Court of Montgomery County pursuant to §§ 40-2-22, 40-21-24 of the Code of Alabama 1975, claiming that its property was unlawfully assessed as Class I property and that § 40-8-1 of the Code is unconstitutional on its face and as applied in this case. Colonial claims that assessing its property as Class I property violates Ala. Const. art. XI, §§ 211, 217 (as amended by Ala. Const. amend. 373); art. IV, § 44 and art. XI, § 212, and the fourteenth amendment of the United States Constitution.
The trial court, in a twenty-two page order, found that §40-8-1's definition of Class I property as that property assessed by the Department of Revenue under § 40-21-1 is contrary to the provisions of amendment 373 because it is overbroad; it converted § 40-21-1 into a taxing statute, and §40-21-1 covers numerous taxpayers which are not utilities. This court considers that all of those findings are conclusions of law and erroneous. The last finding is also overbroad and improper because *Page 410 
it includes parties and properties not involved in this case — this case relates only to the property of Colonial Pipe Lines. The second finding is not a proper construction of § 40-21-1. The first is an erroneous construction of § 40-8-1. We discuss these propositions and others hereafter because Colonial's argument tracks the order of the trial court.
In 1935 the legislature enacted the predecessor of what is presently § 40-21-1, Code of Alabama 1975. Section 40-21-1
provides that the department shall assess for taxation the property of various taxpayers including the property of pipelines transporting oil, gasoline or other commodities of commerce as well as the property of all public service or public utility corporations. All other ad valorem assessments are made locally by counties under § 40-8-4, Code of Alabama 1975. (1978 Ala. Acts, 2nd Ex. Sess., No. 46, p. 1724 § 3). Section 40-21-1 does not establish the ratio to market value at which the property of a particular taxpayer will be assessed, but it simply provides that such property will be assessed centrally by the State instead of locally by counties wherein the property may be located. The obvious reason for the central assessment is that the property runs across county lines.
Until 1972 central assessment was of no significance in determining a taxpayer's ad valorem tax liability, but rather was primarily a matter of convenience. In 1972 the passage of Alabama Constitutional amendment 325, amending § 217 of the Alabama Constitution, provided for the division of all taxable property into three classes for purposes of ad valorem taxation. The divisions for taxation were as follows: "Class I. All property of utilities used in the business of such utilities. Class II. All property not otherwise classified. Class III. All agricultural, forest and residential property." Different ratios of assessment apply to each class: "Class I. 30 per centum, Class II. 25 per centum, Class III. 15 per centum."
In 1973 the legislature amended § 40-8-1 of the Code of Alabama 1975, to implement the provisions of amendment 325. Section 40-8-1, as amended, provided a definition of the classifications of property. Section 40-8-1 (b)(1) defines property of utilities to be, "[a]ll property assessed for taxation by the Department of Revenue pursuant to the provisions of [§ 40-21-1]." Oil pipelines traditionally taxed under § 40-21-1 continued to be taxed under this section. The rate of taxation assessed against oil pipelines became thirty percent (30%) as provided for property of utilities in §40-8-1.
In 1978 amendment 373 was ratified. This amendment superseded amendment 325 and further amended § 217. Amendment 373 created four classes of property for purposes of ad valorem taxation rather than three classes. The property of utilities remained classified under Class I at the highest assessment rate of thirty percent (30%). Section 40-8-1 was again amended to reflect the changes made by amendment 373.
The trial court held that Colonial's property could not be assessed as Class I property under the authority of amendment 373, unless Colonial is found to be a utility as defined by Alabama law. Both appellant and appellee in brief offer various definitions and criteria to determine what constitutes a utility; however, such is unnecessary, for we consider a constitutionally adequate definition is provided in § 40-8-1
(b)(1).
Section 40-8-1 (b)(1) defines property of utilities as "[a]ll property assessed for taxation by the department of revenue pursuant to the provisions of Chapter 21 of this title." Section 40-21-1 provides that it is the duty of the department "to assess for taxation all property of all . . . pipelines fortransporting or furnishing natural, manufactured or by-product,gas, water, oil, gasoline or other commodities of commerce. . .." (Emphasis supplied.) Section 40-21-1, since its enactment in 1935, has been Article 1 of Chapter 21, entitled "Public Utilities" of the Alabama Code. Section 40-21-50 begins Article 2 of Chapter 21 of the Code of Alabama 1975. That section *Page 411 
provides for license taxes and begins, "For each person operating a public utility, such as a street railroad . . . pipeline company for transporting or carrying gas, oil, gasoline, water or other commodities, . . . ." (Emphasis supplied.) These furnish certain evidence that the legislature intended that an operation such as Colonial's be identified as a public utility.
Colonial contends that it is not a public utility because it is not subject to the utility gross receipts tax. That contention loses its force upon an examination of the terms and definitions of the legislation by which the tax was enacted. It is obvious that for the purpose of the utility gross-receipts tax, the legislature further refined the classification of public utilities. Section 40-21-80 is a definition section. It provides:
 "(a) For the purpose of this article, the following terms shall have the respective meanings ascribed by this Section:
. . . .
 "(7) Utility. Every person regularly engaged in furnishing Utility services to another person or other persons in the State of Alabama.
 "(8) Utility Services. Electricity, domestic water, natural gas, telegraph services and telephone services to subscribers. . . ."
It requires little logic to recognize that the legislature determined that certain public utilities engaged in furnishing subscriber services to persons within the state would be taxed upon the gross receipts from such services. Other public utilities such as pipelines engaged in interstate commerce would not be included for many obvious reasons. However, such failure to tax does not limit the general classification of public utility used in licensing and ad valorem tax statutes. Such distinctions in classification for taxing purposes are within the broad powers of a legislature and are presumed valid under the constitution. Howell v. Malone, 388 So.2d 908 (Ala. 1980); Miller v. State, 349 So.2d 129 (Ala.Cr.App. 1977);Belcher v. McKinney, 333 So.2d 136 (Ala. 1976).
The trial court found that the statutory definition contained in § 40-8-1 violates amendment 373 which defines Class I property as "all property of utilities used in the business of such utilities." The court reasoned that since amendment 373 merely refers to all property of utilities without further elaboration, the statutory definition of utilities contained in § 40-8-1 is overly broad and therefore invalid. We do not find the statute overly broad.
Colonial shares common characteristics of a utility so that statutorily classifying it as a utility is not unreasonable. For example, Colonial has the right of eminent domain in Alabama. See §§ 10-5-1, -4, -8, Code of Alabama 1975. The evidence established that Colonial is regulated by the Federal Energy Regulatory Commission (FERC). The tariffs which it charges its customers must be filed with the FERC and are subject to the Commission's approval. In addition, the rates or tariffs allowed to be charged by Colonial must be filed with the FERC and are subject to the Commission's approval. The evidence further indicated that the rates or tariffs allowed to be charged by Colonial are based on the valuation of the property of Colonial by the FERC. One of Colonial's witnesses testified to a ten percent (10%) return on equity allowed by the FERC to Colonial based upon its valuation of Colonial's property. Further testimony established that the FERC requires Colonial to transport goods for any person meeting the minimum standards set by the FERC with regard to batch sizes. Colonial is not regulated by the Alabama Public Service Commission, because Colonial is engaged strictly in interstate commerce, which is outside the domain of the Alabama Public Service Commission. See § 37-2-1, Code of Alabama 1975.
The Department further contends that the trial court erred in finding that the treatment of oil pipeline property as Class I property of utilities for ad valorem tax purposes violates the equal protection clauses of the United States Constitution and Alabama Constitution of 1901. State *Page 412 
legislatures are presumed to have acted within their constitutional power in passing laws, even though in practice their laws result in some inequality. Howell v. Malone, supra.
Moreover, a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it. Id.
The equal protection clause "imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation." Allied Stores of Ohio,Inc. v. Bowers, 358 U.S. 522, 526, 79 S.Ct. 437, 440,3 L.Ed.2d 480 (1959).
In order for a state taxing classification to withstand a challenge on constitutional grounds under the equal protection clause, there must be a "rational basis" for the possible discriminatory effect of that tax. The trial court determined that there was no rational basis for treating the property of buslines, trucklines, airlines or water carriers differently from that of Colonial. The Alabama Supreme Court in Gideon v.Alabama State Ethics Commission, 379 So.2d 570 (Ala. 1980),citing Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612,46 L.Ed.2d 659 (1976), stated that under the rational basis test a court must inquire (a) whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose.
In determining whether there is a proper governmental purpose,
 "A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of the facts which afford a reasonable basis for its action."
Carmichael v. Southern Coal Coke Co., 301 U.S. 495, 510,57 S.Ct. 868, 872, 81 L.Ed. 1245 (1937). The Alabama Supreme Court has adopted essentially the same rule, for it stated "[M]uch must be left to the discretion of the Legislature, for exact equality of taxation can never be reached." Woco Pep Co. ofMontgomery v. Montgomery, 213 Ala. 452, 457, 105 So. 214, 219
(1925). "So long as the burden falls with equal weight upon every member of a given class," it is difficult to argue that a tax violates the equal protection provisions of either the state or federal constitution. Id.
"A state law is not arbitrary though it `discriminate[s] in favor of a certain class . . . if the discrimination is founded upon a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution." Kahn v. Shevin,416 U.S. 351, 355, 94 S.Ct. 1734, 1737, 40 L.Ed.2d 189 (1974),quoting Allied Stores of Ohio v. Bowers, 358 U.S. 522, 528,79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959).
After examining the law and the findings of the trial court, we conclude that the trial court erred in finding that the state had no rational basis for its decision to include oil pipelines in § 40-21-1, characterizing them as utilities for purposes of ad valorem taxation. If there may be some discrimination against Colonial, it is not arbitrary or unreasonable. Until the state was specifically forbidden to tax the property of railroads at a higher assessment ratio than other commercial and industrial property by Congress in 49 U.S.C.A. § 11503, it classified the property of railroads as Class I property. Moreover, until forbidden to do so by the Circuit Court of Montgomery County in Delta Airlines v.Department of Revenue, Civil Action No. CV-80-116-G, the Department classified the property of airlines as utilities and taxed them as Class I property. The Tax Equity Fiscal Responsibility Act of 1982, § 532 amending 49 U.S.C. § 1513 (b) and (d), now has the effect of forbidding the state from assessing property of air carriers at a higher rate than other commercial and industrial property.
Currently, the state is specifically forbidden to classify the property of motor carriers as Class I property by 49 U.S.C.A. *Page 413 
§ 11503a, which gives the motor carriers the same protection from high assessment rates that is afforded railroads and air carriers. Were it not for the supremacy of federal statutes over state law, airlines, trucklines and railroads, which are included in § 40-21-1, would be subject to the same Class I classification as is assigned Colonial's property. The preemption for tax purposes of those other entities does not destroy the classification by state law from which they were exempted and to which Colonial continues to belong.
We stated in Metropolitan Life Insurance Co. v. Forrester,437 So.2d 535, 538 (Ala.Civ.App. 1983), "The law is clear that the party attacking a statute has the burden of overcoming the presumption of constitutionality and must negate every conceivable or reasonable basis which might support the classification." In this case Colonial has not met its burden. "We have returned to the original constitutional proposition that courts do not substitute their social and economic beliefs for the judgment of the legislative bodies which are elected to pass laws." Howell v. Malone, supra, quoting, Ferguson v.Skrupa, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93
(1963). We find no violation of the equal protection clause of either the state or federal Constitution.
For error in the application of law to the facts, the order of the court below is reversed, and the case is remanded for entry of judgment in favor of the Department of Revenue.
REVERSED AND REMANDED.
BRADLEY and HOLMES, JJ., concur.
[1] Although the named appellant in this case is the State of Alabama, the Alabama Department of Revenue administers the ad valorem tax at issue in this case; therefore all further references will be to the department rather than the State of Alabama.