BOLIN, Justice.
 

 This appeal involves the constitutionality of Act No. 2006-398, Ala. Acts 2006, codified at § 33-6A-3.1, Ala.Code 1975, effective July 1, 2006 (hereinafter referred to as “the Act”), which prohibits certain marine vessels on three impoundment lakes in Alabama — Lake Martin, Weiss Lake, and Lake Harris (also known as Lake Wedow-ee).
 
 [1]
 
 All three lakes are hydroelectric-impoundment lakes created and owned in
 
 *563
 
 whole or in part by Alabama Power Company.
 

 Facts and Procedural History
 

 The Act, which was signed into law by Governor Bob Riley on April 17, 2006, prohibits the following vessels on Lake Martin, Weiss Lake, and Lake Harris: (1) “beginning July 1, 2007, the use of houseboats shall be prohibited”; (2) “[bjeginning October 1, 2006, the use of recreational vessels greater than 26 feet 11 inches in length and rated by the manufacturer for or capable of a top speed in excess of 60 miles per hour shall be prohibited” (i.e., “high performance” or “go-fast” boats such as “cigarette boats”); and (3) “beginning July 1, 2007, the use of recreational vessels greater than 30 feet 6 inches in length, as determined by the straight line distance between the ends of the boat, excluding bowsprits, outboard motor brackets, rudders, or other attachments, shall be prohibited.” The Alabama Department of Conservation and Natural Resources (hereinafter “DCNR”) promulgated regulations to implement the Act, which provide further certainty in measuring the prohibited vessels: “[T]he length of vessels shall be determined by measuring the straight line distance from the bow to the lowest part of the transom, excluding bowsprits, outboard motor brackets, rudders, or other attachments, and excluding any swim platforms whether molded into the hull construction or otherwise.” Ala. Admin. Code (Department of Conservation and Natural Resources), Rule 220-6-.55(d).
 

 The Act also provides that some otherwise prohibited vessels are “grandfathered” under the Act and that certain vessels shall be excluded from the listed prohibitions: Houseboats can remain in use if they (1) are inspected annually, (2) were licensed and in use on the effective date of the Act, (3) meet all applicable standards for sewage disposal, and (4) are moored at a marina or other facility with an approved means of sewage disposal. § 33-6A-3.1(e); Ala. Admin. Code (Department of Conservation and Natural Resources) Rule 220-6-.55(b)(l), (b)(2), and (c). Houseboats are (1) a residence boat as that term is defined in the preexisting statute (§ 33-6A-l(6), Ala.Code 1975), and (2) “any recreational vessel that constitutes a fully equipped dwelling similar in content to a mobile home, with a marine sanitation device, galley, and sleeping quarters.” § 33-6A-3.1 (a)(1). A grandfathered vessel may be operated only on the lake where it was already in use and requires a yearly permit. § 33-6A-3.1(e).
 

 On July 27, 2006, boat owners Steven L. Northington, Richard H. Miller, Jeff Old-nettle, Allen D. Plott, Todd Trolinger and Melissa Trolinger, as well as Nelems Marine, Inc. (hereinafter referred to collectively as “the challengers”), sued DCNR, as well as two of its senior officials, M. Barnett Lawley and M.N. Pugh. In their complaint, the challengers claimed that the Act arbitrarily created classifications that violated the equal-protection guarantees and Due Process Clauses of the United States Constitution and Alabama Constitution of 1901. The challengers further complained that the Act was void because it was unconstitutionally vague. Alabama Power Company, as well as other property owners on the three lakes — Richard Bronson, David Heinzen, David L. French, and M.R. Taffet — subsequently intervened as defendants in the case. Following an ore tenus hearing, the trial court entered a judgment, declaring that the Act did not violate the equal-protection guarantees and Due Process Clauses and that it was not unconstitutionally vague.
 
 [2]
 
 The chal
 
 *564
 
 lengers filed a motion to alter, amend, or vacate the judgment. Following a hearing, the trial court denied that motion, and this appeal followed. On appeal, the challengers argue that the classifications in the Act are arbitrary because, they say, those classifications do not further a legitimate governmental purpose and cannot be rationally related to any reasonably conceivable governmental purpose. They also argue on appeal that the Act is unconstitutionally vague.
 

 Standard of Review
 

 The trial court’s judgment was entered after a bench trial, at which the court heard ore tenus evidence. “ ‘When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.’ ”
 
 Smith v. Muchia,
 
 854 So.2d 85, 92 (Ala.2003) (quoting
 
 Allstate Ins. Co. v. Skelton,
 
 675 So.2d 377, 379 (Ala.1996)). This Court’s review of constitutional challenges to legislative enactments is de novo.
 
 Board of Water & Sewer Comm’rs v. Hunter,
 
 956 So.2d 403 (Ala.2006). In
 
 McInnish v. Riley,
 
 925 So.2d 174, 178 (Ala.2005), this Court further stated:
 

 “[T]he standard of review of the trial court’s judgment as to the constitutionality of legislation is well established. This Court ‘ “should be very reluctant to hold any act unconstitutional.” ’
 
 Ex parte D.W.,
 
 835 So.2d 186, 189 (Ala.2002)(quoting
 
 Ex parte Boyd,
 
 796 So.2d 1092, 1094 (Ala.2001)). ‘[ijn passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every
 
 presumption and intendment in favor of its validity,
 
 and seek to sustain rather than strike down the enactment of a coordinate branch of the government.’
 
 Alabama State Fed’n of Labor v. McAdory,
 
 246 Ala. 1, 9, 18 So.2d 810, 815 (1944) (emphasis added). This is so, because ‘it is the recognized duty of the court to sustain the act unless it is
 
 clear beyond reasonable doubt that it is violative of the fundamental law.’
 
 246 Ala. at 9, 18 So.2d at 815 (emphasis added).”
 

 Moreover, the rational-basis test is the proper test to apply to either a substantive-due-process challenge or an equal-protection challenge when neither a suspect class nor a fundamental right is involved.
 
 Gideon v. Alabama State Ethics Comm’n,
 
 379 So.2d 570 (Ala.1980). “Under the rational basis test the Court asks: (a) Whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose.” 379 So.2d at 574.
 

 The law is clear that a party attacking the constitutionality of a statute has the burden of negating every conceivable or reasonable basis that might support the constitutionality of the statute.
 
 Thom v. Jefferson County,
 
 375 So.2d 780 (Ala.1979). Moreover, this Court will uphold a statute as long as the statute implements any rational purpose.
 
 State v. Colonial Pipeline Co.,
 
 471 So.2d 408 (Ala.Civ.App.1984). “[A] statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it.” 471 So.2d at 412. “Unless clearly and patently arbitrary, oppressive and capricious on its face, such classification is not subject to judicial review. Mere inequality under such classification is not sufficient to invalidate a statute.”
 
 State v. Spann,
 
 270 Ala. 396, 400, 118 So.2d 740, 743 (1959).
 

 With regard to challenging a statute as impermissibly vague, the United States Supreme Court has stated:
 

 
 *565
 
 “A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.
 
 Chicago v. Morales,
 
 527 U.S. 41, 56-57 (1999).”
 

 Hill v. Colorado,
 
 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000).
 

 Discussion
 

 In addressing the due-process and equal-protection challenges, this Court must presume that the Act is valid and construe the Act in favor of its constitutionality.
 
 Mclnnish, supra.
 
 In its order, the trial court noted that “[l]imiting certain boats from certain lakes can positively affect the use, enjoyment, and overall atmosphere, of those lakes” and that it is “reasonable for a state to seek to reserve particular waterways for particular purposes and to foster particular atmospheres.” The trial court further noted that the Act may have been rationally related to any of the following goals: (1) zoning — protecting the public’s use and enjoyment of the lakes that are the subject of the Act by reducing congestion and noise, enhancing the value of lake property, and ensuring the general peace and tranquility; (2) public safety — reducing the potential harm arising from a collision between a large boat and a small boat and reducing the likelihood of improper usage or malfunction of marine-sanitation devices, like those often found on houseboats; and (3) environmental — protecting the shoreline from erosion and ensuring water quality by limiting certain boats that can produce large wakes capable of washing over seawalls and onto adjoining land thereby causing erosion and pollution. The trial court’s determination in this regard is supported by the record. Any of these possible goals would support enactment of the Act. The trial court also took notice that the State of Georgia already prohibits vessels longer than 30 feet 6 inches from certain of its waterways. See Ga.Code Ann., § 52-7-13(g)(l) and (h)(1).
 

 Evidence was presented indicating that certain issues were major concerns on Alabama’s impoundment lakes, i.e., protection of the integrity and quality of life of residents whose property adjoins the lakes, public-safety issues, declining property values caused by congestion on the waterways, etc. There was evidence indicating that most high-performance boats are longer than 26 feet 11 inches and have the capability to attain speeds in excess of 60 miles per hour. One classification of vessels in the Act is vessels longer than 30 feet 6 inches, which captures a majority of heavy vessels that produce large wakes capable of washing over seawalls and onto adjoining land, thereby causing erosion and pollution. Limiting boats of a certain size on the lake can also address the potential safety concerns associated with the wakes of those boats and the potential destructive force in the event such a boat collides with a smaller boat. Also, there was evidence indicating that improper use of a marine-sewage-disposal device on a houseboat can cause human waste to be released into the lake. The three lakes affected by the Act — Lake Martin, Weiss Lake, and Lake Harris — are actually very close to the Georgia line and concern was expressed that Georgia residents who own boats prohibited by a similar Georgia statute could very well migrate to these three impoundment lakes in Alabama, thereby causing additional congestion.
 

 The challengers seemingly imply that a court hearing a constitutional challenge has an obligation to examine the legislature’s actual motivations in passing
 
 *566
 
 an act. Specifically, they argue that the real intent of the legislature in enacting the Act was to “protect Alabama Power’s enormous real estate interests by enacting boat restrictions designed to attract upscale real estate developers to Lakes Martin, Harris, and Weiss.” The challengers’ argument in this regard is inapplicable to the well settled rational-basis analysis. The fundamental inquiry in a rational-basis analysis “is concerned with the
 
 existence
 
 of a conceivably rational basis, not whether that basis was actually considered by the legislative body.”
 
 Haves v. City of Miami,
 
 52 F.3d 918, 922 (11th Cir.1995). In other words, the actual motivations of the legislature are irrelevant.
 

 The record in this case is voluminous, and there is an overabundance of evidence to support the trial court’s conclusion that the Act furthers one or more conceivable legitimate governmental purposes and that the classifications in the Act are rationally related to those purposes. Accordingly, we conclude that the Act is neither arbitrary nor discriminatory and that it does not violate either the equal-protection guarantees or the Due Process Clauses of the United States Constitution and the Alabama Constitution.
 

 The challengers also argue that the Act is unconstitutionally vague because, they say, the Act does not provide adequate standards for measuring and enforcing the speed capability of a boat. Assuming that the challengers have standing to challenge the Act,
 
 [3]
 
 we conclude that they have failed to introduce any persuasive evidence to support their contention that the Act is vague.
 

 In
 
 Jansen v. State,
 
 273 Ala. 166, 170, 137 So.2d 47, 50 (1962), this Court stated:
 

 “[C]ourts may declare legislative enactments to be inoperative and void for indefiniteness or uncertainty in meaning. But such power should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended.”
 

 After reviewing the plain language of the Act, as well as the testimony in the record, we conclude that the Act contains sufficient notice to the public regarding the type of marine vessels that are prohibited on the three impoundment lakes: houseboats; recreational vessels greater than 26 feet 11 inches in length and rated by the manufacturer for, or capable of, a top speed in excess of 60 miles per hour; and recreational vessels greater than 30 feet 6 inches in length. The Act defines a “houseboat,” and it further provides how the length of boats should be measured. There is also testimony in the record regarding how the speed capability of a boat is determined. As the trial court noted:
 

 “The speed capability of a vessel is readily ascertainable. Often, the manufacturers provide the vessel’s speed capability to the boat purchaser — i.e., manufacturer-rated speed. Further, a simple GPS [Global Positioning System] device, which may be handheld, is a common way by which a boat operator can determine his or her vessel’s speed capability.”
 

 The testimony in the record suggests that GPS devices do in fact measure
 
 *567
 
 speed with a sufficient degree of accuracy to determine the speed capability of a boat. DCNR Lieutenant Erica Shipman testified that a boat owner can determine the speed of his or her boat using a GPS device. Robert Nelems, the owner of challenger Nelems Marine, Inc., testified that “[a] lot of the boats now have built-in GPS, which is dead-on accurate.” The evidence suggests that the challengers are well aware of whether their boats fall within the purview of the Act. A statute will be declared vague “only if a person of ordinary intelligence, exercising common sense, can derive no rule or standard at all from the statute’s language.”
 
 Friday v. Ethanol Corp.,
 
 539 So.2d 208, 213 (Ala.1988). We conclude that the Act in this case is not so uncertain in meaning, or so incomplete, or so conflicting, or so vague or indefinite, as to warrant its invalidation.
 
 Jansen, supra.
 
 We further conclude that the prohibitions contained in the Act are understandable by a person of ordinary intelligence and that the Act does not authorize or encourage arbitrary and discriminatory enforcement.
 

 We note that the challengers also argue that the Act on its face grants a “special privilege” in violation of § 22 of the Alabama Constitution of 1901, which, they say, prohibits the legislature from “making ... grants of special privileges” to individuals or corporations. Specifically, they argue that the Act was meant to benefit economically only Alabama Power Company and investors interested in pursuing highly profitable upscale real-estate developments on the three impoundment lakes at the expense of the rights of Alabama boat owners. After thoroughly reviewing the voluminous record, this Court concludes that the challengers never argued this point before the trial court; they, therefore, cannot raise it for the first time on appeal.
 
 Head v. Triangle Constr. Co.,
 
 274 Ala. 519, 150 So.2d 389 (1963).
 

 The judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . An impoundment lake is a lake created by a dam that does not include a lock for travel.
 

 [2]
 

 . The trial court noted in its opinion that the challengers and DCNR had reached an agree
 
 *564
 
 ment that DCNR would not enforce the Act pending resolution of this action.
 

 [3]
 

 . See
 
 Board of Water & Sewer Commissioners,
 
 956 So.2d at 418. (”[I]n order to challenge a statute on the basis of vagueness, the challenger must first have standing to do so.” "[A] litigant has no standing to assert a vagueness claim against a statute if the litigant’s conduct is clearly proscribed by that statute.”).