DONALDSON, Judge.
This is an appeal from a judgment dismissing a 38-page, 9-count complaint *962 containing 159 separately numbered paragraphs filed against 2 defendants, individually and in their official capacities as employees of the state, by 6 individual plaintiffs. The complaint alleges that the plaintiffs’ names appear on a central registry listing individuals against whom reports of alleged child abuse or neglect have been filed. The plaintiffs contend that, pursuant to the Due Process Clause of the 14th Amendment to the United States Constitution and/or state law, they were entitled to a hearing to deny and dispute the allegations against them before their names were entered into the registry. As explained infra, the plaintiffs sought declaratory relief, injunctive relief, and monetary damages. We affirm the judgment in part, reverse it in part, and remand the cause for further proceedings.

Background, Facts, and Procedural History

On January 30, 2012, Michelle Duran, Crystal Calhoun, Kurt Bongers, Bryan Burroughs, Shannon Trammell, and James Van Kleeck (“the plaintiffs”) filed a complaint in the Shelby Circuit Court (“the trial court”) against Kim Mashego, individually and in her official capacity as the Director of the Shelby County Department of Human Resources (“the Shelby County DHR”), and Nancy Buckner, individually and in her official capacity as the Commissioner of the Alabama Department of Human Resources (“DHR”). In the complaint, the plaintiffs described their status as follows:
“The plaintiffs are parents of children who have been the subject of reports made to the Department of Human Resources. In these reports, allegations of child abuse/neglect were made about the plaintiffs. The plaintiffs contend that they are not guilty of child abuse/neglect or any other wrongdoing. The plaintiffs contend that the allegation and the reports are false and unsubstantiated.”
Under Alabama law, DHR has the duty to investigate all reports of child abuse or neglect and to make an assessment of any such report. § 26-14-6.1, Ala.Code 1975; Ala. Admin. Code (DHR), Rule 660-5-34-.02. After an investigator’s assessment of the reported child abuse or neglect, DHR typically designates either an “indicated” or “not indicated” disposition for the report.[1] An “indicated” disposition is defined as “[wjhen credible evidence and professional judgment substantiates that an alleged perpetrator is responsible for child abuse or neglect.” § 26-14-8(a)(1), Ala. Code 1975. A “not indicated” disposition denotes that “credible evidence and professional judgment does not substantiate that an alleged perpetrator is responsible for child abuse or neglect.” § 26-14-8(a)(2).
Section 26-14-7.1, Ala.Code 1975, provides that certain persons who have come under investigation by DHR for child abuse or neglect shall receive notice of the investigation and may request a hearing. That statute provides, in part:
“Any person who comes under investigation by the Department of Human Resources for the abuse or neglect of a child or children and who is employed by, serves as a volunteer for, holds a license or certificate for, or is connected with any facility, agency, or home which cares for and controls any children and which is licensed, approved, or certified by the state, operated as a state facility, or any public, private, or religious facility or agency that may be exempt from licensing procedures shall be granted *963 the following due process rights by the Department of Human Resources:
“(1) The department shall notify the alleged perpetrator that an investigation has commenced against him or her after such investigation has officially begun in accordance with written policies established by the Department of Human Resources. The notice shall be in writing and shall state the name of the child or children allegedly abused, the date or dates that the alleged abuse is thought to have occurred, and the substance of the person’s actions which are alleged to be abusive. The department shall establish and maintain written policies outlining the specifics of such notification and other policies deemed necessary and prudent by the department to inform the alleged perpetrator of his rights and the procedures utilized by the department involving child abuse and neglect investigations.
“(2) If the department conducts an investigation relating to child abuse/neglect, the alleged perpetrator shall be notified of the investigator’s conclusions.
“(3) If the department’s investigators conclude that child abuse/neglect is indicated, an investigative hearing may be held to confirm or reject the investigators’ conclusions.
“(4) The alleged perpetrator shall be given ten departmental working days from the receipt of the notification of the investigator’s conclusions to request a hearing, and such request must be in writing. If no such request is received in the department’s office within ten departmental working days, the alleged perpetrator’s opportunity for a hearing shall be considered waived by the department.”
An “aggrieved person” may also request a hearing to contest the allegations in a report of child abuse or neglect pursuant to Ala. Admin. Code (DHR), Rule 660-1-5-.03. An “aggrieved person” is someone who is “adversely affected by any action or inaction of [DHR].” Ala. Admin. Code (DHR), Rule 660-l-5-.01(l). According to the DHR administrative regulations, a person named in a report with a preliminary “indicated” disposition is entitled to either a hearing or an administrative record review:
“(1) All persons allegedly responsible for abuse/neglect with substantiated (i.e., indicated) CA/N [child abuse/neglect] dispositions must be given an opportunity to disagree with the [DHR]’s findings through either a CA/N hearing or an administrative record review....
“(2) Any person who is approved, licensed, or certified to care for children; and any person who is employed (i.e., professional, non-professional, contract) by, serves as a volunteer for, or is connected with ... any facility, agency, or home which cares for and controls any children and the facility is licensed, approved, or certified by the state; operated as a state facility; or is any public, private, or religious facility or agency that may be exempt from licensing procedures must be offered a CA/N hearing when they have been identified as the person allegedly responsible for abuse/neglect and the preliminary CA/N disposition is ‘indicated.’ These individuals must be offered a hearing even if they were reported to have abused/neglected their own children.
“(3) Any person allegedly responsible for abuse/neglect who has a preliminary ‘indicated’ disposition and is not entitled to a CA/N hearing must be offered an administrative record review. The record review is completed to determine if the CA/N assessment contains sufficient *964 documentation based on a preponderance of credible evidence to support the ‘indicated’ disposition of child abuse/neglect.”
Ala. Admin. Code (DHR), Rule 660-5-34-.08 (emphasis and bold typeface in original).
A hearing is defined in the regulations as being “fact finding in nature and designed to elicit the facts in an atmosphere that allows the person responsible for the abuse/neglect to contest the evidence presented against him.” Rule 660-5-34-.08(6). In an administrative record review, DHR determines whether “sufficient documentation based on a preponderance of credible evidence ... supports] the ‘indicated’ disposition of child abuse/neglect.” Rule 660-5-34-.08(3). DHR considers pri- or reports of child abuse or neglect in administrative record reviews. Rule 660-5-34-08(7). The DHR staff members who conduct an administrative record review are not the same persons involved with the investigation of the report. Id.
Established pursuant to § 26-14-8, Ala.Code 1975, the central registry is a record of the reports of child abuse and neglect and is maintained for the primary purpose of protecting children. Duncan v. State Dep’t of Human Res., 627 So.2d 427, 428 (Ala.Civ.App.1993). Once DHR receives a report of child abuse or neglect, the report must be entered into the central registry within three working days. Ala. Admin. Code (DHR), Rule 660-5-34-09(3). Among other information, the report includes information identifying the person allegedly responsible for the child abuse or neglect and the results of DHR’s assessment (i.e., DHR’s disposition of the report as either “indicated” or “not indicated”). Rule 660-5-34-.09(4). Section 26-14-8 instructs DHR to keep the information on the central registry in a confidential manner. Disclosure of information from the central registry — i.e., reports and records pertaining to child abuse or neglect — is permitted only for the following purposes:
“(1) To permit their use to prevent or to discover abuse or neglect of children through the information contained therein, except reports or records in cases determined to be ‘not indicated’ shall not be used or disclosed for purposes of employment or other background checks; or
“(2) For investigation of child abuse or neglect by the police or other law enforcement agency; or
“(3) For use by a grand jury upon its determination that access to such reports and records is necessary in the conduct of its official business; or
“(4) For use by a court where it finds that such information is necessary for the determination of an issue before the court; or
“(5) For use by any person engaged in bona fide research who is authorized to have access to such information by the Commissioner of the Department of Human Resources; or
“(6) For use by any person authorized by a court to act as a representative for an abused or neglected child who is the subject of a report; or
“(7) For use by a physician who has before him a child whom he reasonably suspects may be abused or neglected; or
“(8) For use by an attorney or guardian ad litem in representing or defending a child or its parents or guardians in a court proceeding related to abuse or neglect of the child; or
“(9) For use by federal, state, or local governmental entities, social service agencies of another state, or any agent of such entities, having a need for the information in order to carry out their *965 responsibilities under law to protect children from abuse and neglect; or
“(10) For use by child abuse citizen review or quality assurance or multidisciplinary review panels; or
“(11) For use by child fatality review panels; or
“(12) For public disclosure of the findings or information about the case of child abuse or neglect which has resulted in a child fatality or near fatality; the term ‘near fatality' means an act that, as certified by a physician, places the child in serious or critical condition. Information identifying by name persons other than the victim shall not be disclosed.”
§ 26-14-8(c). Section 26-14-8(d) permits disclosure of information to employers or potential employers regarding only reports that have an “indicated” disposition:
“The names of persons or information in the investigative report placed on the state’s central registry which may be made available to the alleged perpetrator’s employer, prospective employer, or others are those cases that the Department of Human Resources or the investigative hearing officer has determined child abuse or neglect to be indicated.”
DHR is prohibited from disclosing reports with a “not indicated” disposition to employers. § 26-14-8(c)(1) (“reports or records in cases determined to be ‘not indicated’ shall not be used or disclosed for purposes of employment or other background checks”). After five years, an individual whose name is listed on the central registry for a report with a “not indicated” disposition may request ex-pungement of their name:
“In the case of any child abuse or neglect investigation which is determined to be ‘not indicated,’ the alleged perpetrator may request after five years from the completion of the investigation that his or her name be expunged from the central registry so long as the Department of Human Resources has received no further reports concerning the alleged perpetrator during the five years, at which time the department shall expunge the name.”
§ 26-14-8(e).
The plaintiffs alleged in their complaint that DHR had informed each of them of a report or reports alleging that he or she was responsible for child abuse or neglect. They alleged that DHR had notified each of them at a later time by letter of an initial disposition of each report, and, regarding any report that received an “indicated” disposition, the affected plaintiff was notified only of the right to an administrative record review pursuant to Rule 660-5-34-.08(3), not to his or her right to a hearing. The plaintiffs alleged that each of them had denied the allegations and that, except for Van Kleeck, each had requested a hearing to dispute the report or reports pertaining to him or her. The plaintiffs complain that DHR did not grant a hearing to any of them.
Duran, Calhoun, and Bongers each have an “indicated” disposition for a report naming him or her as allegedly responsible for child abuse or neglect. Van Kleeck has both “indicated” and “not indicated” reports. Burroughs and Trammell have “not indicated” dispositions for their reports. At the time the complaint was filed, DHR had conducted administrative record reviews for Duran, Burroughs, and Tram-mell. Following the pertinent administrative record review, Burroughs and Tram-mell each received a letter stating that DHR did not find sufficient credible evidence in the record to support the report made against him or her and that it would enter a “not indicated” disposition on the central registry for the relevant report. The letters informed Burroughs and Trammell that he or she could request to *966 have his or her name removed from the central registry after five years if no other reports concerning him or her were received during that time. Duran received a letter from DHR after the administrative record review regarding her “indicated” report. The letter stated that the disposi-tional finding of “indicated” would be listed on the central registry for that report. DHR notified Bongers that it would conduct an administrative record review for the “indicated” report involving him, but the complaint does not reflect whether he had received the results of the review at the time the complaint was filed.
The plaintiffs asserted a number of claims against the defendants in both their individual and official capacities. Counts one through five of the complaint purported to assert claims pursuant to 42 U.S.C. § 1983. Counts six through nine[2] purported to assert claims based on alleged violations of state law. Count one alleged, in part:
“114. The defendants, acting under color of law, cause plaintiffs to be stigmatized as child abusers by listing, and continuing to list, the plaintiffs name and information on the Central Registry. That stigma, when coupled with the alteration or extinguishments of a right or status previously recognized by State law, and the statutory consequences of being listed on the Central Registry constitutes a liberty interest that may not be deprived without due process of the law.”
Count two alleged, in part:
“121. By listing plaintiffs on the Central Registry, the defendants have stigmatized plaintiffs as child abuser and/or a person ‘indicated’ for child abuse/neglect.
“122. That stigma, caused by the defendants while acting under color of State law, when coupled with the alteration or extinguishments of the right to a hearing which was previously recognized by State law has resulted in a constitutional deprivation; and, plaintiffs are currently without a constitutionally adequate and sufficient process by which they can challenge the ‘indicated disposition’ and/or continued listing on the Central Registry.”
Count three sought only injunctive relief
“restraining and enjoining defendants from maintaining the plaintiffs’ names and information on the Central Registry; and, denying to plaintiffs a hearing for the purpose of denying and disputing the report, the allegations and the ‘indicated disposition’; and, continuing the custom, policy or practice of failing to fully inform persons subject to ‘indicated disposition’ of their rights and the methods by which the ‘indicated disposition’ can be controverted.”
Count four sought a judgment declaring that the “application of the statutes, rules and regulations [referenced in the complaint] require the defendants to provide the plaintiffs with a post-deprivation hearing before the defendants can place plaintiffs’ names and information on the Central Registry.”
Count five claimed that § 26-14-7.1 denies the plaintiffs equal protection of the law because
“it unconstitutionally designates a class of persons who are entitled to a hearing and denies that hearing to another class of persons; and, does so without a ra *967 tional basis or for the purpose of satisfying a compelling state interest.”
In support of this count, the plaintiffs also alleged:
“134. Other persons, who meet the requirements of Section 26-14-7.1 and who made proper request for a hearing, have received a hearing.
“185. The denial of plaintiffs’ hearing request was arbitrary, capricious and has no rational basis. The denial of plaintiffs’ hearing request is an unconstitutional deprivation and is violative of equal protection of the law.”
Following the five § 1983 counts, the plaintiffs included a prayer for relief requesting money damages as well as declaratory and injunctive relief.
Count six, although titled “Negligence and Wantonness” by the plaintiffs, appears to allege a state-law claim against the defendants, based on the denial of the plaintiffs’ requests for a hearing pursuant to § 26-14-7.1, by alleging, in part:
“144. The defendants did not have the discretionary authority to deny, refuse or ignore the hearing request(s). The defendants acted beyond their authority in denying the request(s); and, the defendants acted willfully, maliciously, fraudulently, in bad faith and/or under a mistaken interpretation of the law.
“145. As a direct and proximate result of that negligence and wantonness complained of herein, plaintiffs were injured and damaged.”
Count seven appears to be substantially the same as count six. In count eight, the plaintiffs alleged:
“155. Defendants had a duty to train and supervise the Department’s employees and agents on the proper manner to review and respond to a hearing request.
“156. Defendants breached that duty.
“157. The defendants did not have the discretionary authority to ignore their statutory duty(s) [sic]. The defendants acted beyond their authority; and, the defendants acted willfully, maliciously, fraudulently, in bad faith and/or under a mistaken interpretation of the law.”
In count nine, the plaintiffs asserted that the defendants had acted negligently and wantonly in establishing policies and procedures relating to requests for a hearing, stating:
“161. Defendants had a duty to establish proper policy(s) [sic] and procedure(s) for the receipt, review and response to a hearing request.
“162. Defendants breached that duty.
“163. The defendants did not have the discretionary authority to ignore their statutory duty(s) [sic]. The defendants acted beyond their authority; and, the defendants acted willfully, maliciously, fraudulently, in bad faith and/or under a mistaken interpretation of the law.
“164. As a direct and proximate result of that negligence and wantonness complained of herein, plaintiffs were injured and damaged.”
The defendants filed a motion to dismiss the complaint for failing to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6), Ala. R. Civ. P. The defendants asserted that none of the plaintiffs had a right to a hearing under § 41-22-12, Ala.Code 1975, or the DHR administrative regulations. They also contended that none of the plaintiffs had a constitutional right to a hearing because the plaintiffs had failed to allege a sufficient deprivation of a constitutionally protected interest because the plaintiffs were asserting only damage to their reputa *968 tions. The defendants asserted that they were immune from liability, in both their individual and their official capacities, for both the § 1983 claims and state-law claims. Finally, the defendants contended that the plaintiffs had failed to state a valid equal-protection claim.
On January 17, 2013, following a hearing, the trial court granted the defendants’ motion to dismiss the entire complaint. The plaintiffs filed a motion to alter, amend, or vacate the judgment on February 12, 2013. The trial court held a hearing on the postjudgment motion on March 28, 2013. The motion was ultimately denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. The plaintiffs filed a timely notice of appeal to the our supreme court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

“As a general rule, a motion to dismiss ‘ “for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief.” ’ ” Ex parte Butts, 775 So.2d 173, 177 (Ala.2000) (quoting Patton v. Black, 646 So.2d 8, 10 (Ala.1994), quoting in turn earlier cases). “[W]hen the complaint is devoid of averments of the requisite elements of any legal claim upon which plaintiff might be entitled to relief, the motion is to be granted.” Lloyd v. Community Hosp. of Andalusia, Inc., 421 So.2d 112, 113 (Ala.1982).
“ ‘ “[I]t is not enough [for the pleading] to indicate merely that the plaintiff has a grievance, but sufficient detail must be given so that the defendant, and the court, can obtain a fair idea of what the plaintiff is complaining [of], and can see that there is some legal basis for recovery.” ’ ”
Id. (quoting Thurston v. Setab Computer Inst., 48 F.R.D. 134, 135 (D.C.N.Y.1969), quoting in turn Eli E. Albert, Inc. v. Dun & Bradstreet, Inc., 91 F.Supp. 283, 284 (D.C.N.Y.1950), and J. Moore, Moore’s Federal Practice at 1653 (2d ed.1948)).

Discussion

I. § 1983 Claims Premised on Due-Process Violations
The question whether counts one through four of the plaintiffs’ complaint were properly dismissed turns on whether any of the plaintiffs alleged an injury that can be redressed through § 1983. That statute provides:
“Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer’s judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.”
(Emphasis added.)
“To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under col- or of state law. Parratt v. Taylor, 451 *969 U.S. 527, 535 (1981) (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)....
“The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power ‘possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.’ United States v. Classic, 313 U.S. 299, 326 (1941).... In Lugar v. Edmondson Oil Co., [457 U.S. 922 (1982) ], the Court made clear that if a defendant’s conduct satisfies the state-action requirement of the Fourteenth Amendment, ‘that conduct [is] also action under color of state law and will support a suit under § 1983.’ Id., 457 U.S., at 935. Accord, Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982); United States v. Price, 383 U.S. [787,] 794, n. 7 [ (1996) ]. In such circumstances, the defendant’s alleged infringement of the plaintiffs federal rights is ‘fairly attributable to the State.’ Lugar, 457 U.S., at 937.
“To constitute state action, ‘the deprivation must be caused by the exercise of some right or privilege created by the State ... or by a person for whom the State is responsible,’ and ‘the party charged with the deprivation must be a person who may fairly be said to be a state actor.’ Ibid. ‘[S]tate employment is generally sufficient to render the defendant a state actor.’ Id., at 936, n. 18; see id., at 937. It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State. See Monroe v. Pape, 365 U.S. [167,] 172 [ (1961) ]. Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.”
West v. Atkins, 487 U.S. 42, 48-50, 108 S.Ct. 2250,101 L.Ed.2d 40 (1988).
“ ‘Section 1983 alone creates no substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in thé Constitution or federal laws.’ ” Wright v. Bailey, 611 So.2d 300, 304 (Ala.1992) (quoting Cornelius v. Town of Highland Lake, Alabama, 880 F.2d 348, 352 (11th Cir.1989)). Section 1983 “merely provides a mechanism for enforcing individual rights ‘secured’ elsewhere, ie., rights independently ‘secured by the Constitution and laws’ of the United States. ‘[O]ne cannot go into court and claim a “violation of § 1983” — for § 1983 by itself does not protect anyone against anything.’” Gonzaga Univ. v. Doe, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002)(quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979)). As our supreme court has stated, “[i]n order to hold a governmental entity liable for an injury inflicted by an employee or agent of the entity, an individual must demonstrate that he or she suffered ‘a constitutional injury at the hands of the individual [governmental employee or agent.]’ ” City of Birmingham v. Major, 9 So.3d 470, 477 (Ala.2008) (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).
The plaintiffs alleged that being listed on the central registry creates a stigma of being labeled perpetrators of child abuse or neglect that harms their reputations and burdens their “ability to *970 pursue employment, activities, and goals that are available to citizens of the State of Alabama.” They claim that the defendants denied each of them a right to a hearing that would have allowed each plaintiff to deny and dispute the allegations asserted against him or her before being listed on the central registry. In essence, the plaintiffs assert that the defendants, who were state employees, deprived them of their liberty without due process of law, in contravention of the Due Process Clause of the 14th Amendment, which protects against deprivations of “life, liberty, or property, without due process of law.” U.S. Const., Amend. XIV, § 1. Although damage to reputation may be addressed through other theories of liability in the appropriate case, there is no constitutional right to be free from an injury to reputation alone. Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In this context, i.e., in asserting a claim for relief under § 1983, the plaintiffs must plead sufficient facts to show that the alleged wrongful conduct by a person or persons acting under color of state law deprived them of more than damage to their reputation, or more than a stigmatization, but instead rose to the level of infringing upon their liberty interest. This has been described as the “stigma plus” requirement, pursuant to which a showing of something beyond stigma or reputational damage is required.
In Smith ex rel. Smith v. Siegelman, 322 F.3d 1290 (11th Cir.2003), the United States Court of Appeals for the Eleventh Circuit applied the stigma-plus test to a case involving listings on the same central registry at issue in this case. In that case, DHR had investigated Smith, a minor, for the alleged sexual abuse of another minor. As a result of the investigation, DHR assigned an “indicated” disposition to the report, and Smith’s name and the report were entered into the registry. Smith contended that he was denied due process when this information was placed on the central registry without affording him the opportunity for an independent hearing. Smith alleged that he had a liberty interest in not being labeled a child sexual abuser. The Eleventh Circuit Court of Appeals examined whether Smith had sufficiently alleged the deprivation of a protected liberty interest and stated:
“The Supreme Court in Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155,1161, 47 L.Ed.2d 405 (1976), held that a person’s interest in reputation alone, ‘apart from some more tangible interests such as employment,’ is not a protected liberty interest within the meaning of the due process clause. ‘To establish a liberty interest sufficient to implicate the fourteenth amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law.’ Cannon v. City of West Palm Beach, 250 F.3d 1299, 1302-03 (11th Cir.2001) (quoting Moore v. Otero, 557 F.2d 435, 437 (5th Cir.1977)). In other words, a ‘stigma-plus’ is required to establish a constitutional violation. Moore, 557 F.2d at 437.”
322 F.3d at 1296-97 (footnote omitted). The Eleventh Circuit Court of Appeals held that Smith’s complaint could not survive the defendants’ motion to dismiss because it failed to allege any facts showing a deprivation of a tangible interest required by the stigma-plus test. “Smith has not contended that he was discharged, demoted, or rejected from a job due to the information on the Registry.” 322 F.3d at 1297. “‘[Wjhen reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983.’” Id. (quoting Cotton v. Jackson, *971 216 F.3d 1328, 1330 (11th Cir.2000)). However, “the deleterious effects that flow directly from a sullied reputation, such as the adverse impact on job prospects, are normally insufficient.” Id. at 1298 (citing Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir.1994)).
As in Smith, the plaintiffs here have not alleged that being listed on the central registry resulted in any actual loss of employment, salary reduction, or any other actual harm or damage to their employment. The plaintiffs failed to state in the complaint that any of them had a position in a field that may be affected by the stigma of being labeled, or being accused of being, a perpetrator of child abuse or neglect. The plaintiffs alleged only that damage to each of their reputations now burdens their prospects to pursue employment. We will assume that the plaintiffs’ allegations are true for the purpose of evaluating the sufficiency of the complaint; however, these general allegations are insufficient to establish a deprivation of a constitutional right. An allegation of an adversely affected tangible employment interest is needed to meet the stigma-plus test, and none of the plaintiffs has alleged an adverse effect on his or her employment with any particularity.
Moreover, the central registry is a confidential database with strict limits on the disclosure of information contained in the registry, see § 26-14-8, Ala.Code 1975, and the complaint alleges only generally that the information regarding the plaintiffs is subject to disclosure. The plaintiffs have not alleged that any disclosures to third parties has occurred, much less disclosure to potential employers. With respect to the reports regarding Burroughs and Trammell, the information on the registry is not subject to disclosure to any employers or potential employers because their reports have a “not indicated” disposition. See § 26 — 14—8(c)(1) (“reports or records in cases determined to be ‘not indicated’ shall not be used or disclosed for purposes of employment or other background checks”). The plaintiffs argue on appeal that a threat of disclosure exists through a malicious attack by computer hackers on the central-registry database. This potential for an unauthorized disclosure is too speculative and hypothetical to support a claim for relief. Thus, we conclude that the plaintiffs failed to sufficiently state a cause of action alleging the deprivation of a constitutionally protected liberty right in employment. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (“Factual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true.... ”).
The plaintiffs also argue that the listings on the central registry infringed upon their protected interest in family integrity. “The right to maintain family integrity is a fundamental right protected by the due process requirements of the Constitution.” Bowman v. State Dep’t of Human Res., 534 So.2d 304, 305 (Ala.Civ.App.1988) (citing Hamilton v. State, 410 So.2d 64 (Ala.Civ.App.1982), citing in turn May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953)).
“ ‘[T]he liberty interest protected by the substantive due process clause was [not] intended to protect every conceivable family relationship from governmental interference, no matter how far removed....’ Pittsley [ v. Warish ], 927 F.2d [3,] 9 [ (1st Cir.1991) ].
“Our reading of the [plaintiffs]’ complaint reveals no more than a conclusory allegation of reputational injury which, absent a cognizable stigma and the ensuing loss of a tangible interest, fails to state a cause of action under § 1983. *972 See Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-61, 47 L.Ed.2d 405 (1976). The [plaintiffs] have neither alleged nor demonstrated any alteration of legal status or injury resulting from any purported defamation that would warrant a finding of a deprivation of a liberty interest otherwise shielded by the substantive and procedural guarantees of the Fourteenth Amendment. See id. at 708-09, 96 S.Ct. at 1164.”
Hodge v. Jones, 31 F.3d 157, 165 (4th Cir.1994) (footnote omitted).
The complaint does not allege that any disclosure of a plaintiffs information on the central registry has, for example, negatively impacted his or her ability to establish a home, to raise a family, to retain child custody, or to adopt a child. Nor does the complaint allege an adverse effect on a plaintiffs family life due to the disclosure of his or her information on the central registry to the court system. The complaint alleges only that defendants created the circumstances for routinely producing the “indicated” dispositions used as evidence in juvenile courts. The complaint, therefore, insufficiently pleads the deprivation of a constitutionally protected interest in maintaining family integrity under the stigma-plus test.
The plaintiffs argue that the right to a hearing provided by statute and by DHR’s regulations is an interest protected by due process and that the denial of an opportunity for a hearing denied each of them a constitutionally protected right. However, even if the plaintiffs could establish that state statutes and DHR’s regulations provided them with the right to a hearing, a procedural right is not a constitutionally protected substantive interest in itself.
“ ‘[A] liberty interest is of course a substantive interest of an individual; it cannot be the right to demand needless formality.’ Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.”
Olim v. Wakinekona, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (footnotes omitted). The right alleged by the plaintiffs to have been created by state law — namely, the right to a hearing — is not cognizable as a separate basis to claim a deprivation of a protected liberty interest without due process.
Therefore, based on our review of counts one through four, the plaintiffs failed to sufficiently plead the deprivation of a liberty interest protected by due process. Those counts of the complaint do not meet an essential requirement for stating a cognizable claim under § 1983. Accordingly, those counts were properly dismissed.
II. § 1983 Claims Premised on Equal-Protection Violations
In count five, the plaintiffs contend that they are entitled to relief under § 1983 on the basis that § 26-14-7.1 violates their rights to equal protection.[3] *973 On appeal, the plaintiffs argue only that the statute is unconstitutional on its face, and not as applied by DHR. Specifically, they allege that the statute provides a right to a hearing to certain persons who meet the criteria established in the statute, but not to others, before being listed on the central registry. Based on the nature of the allegations, it appears that Bongers and Van Kleeck contend that they do not meet the statutorily defined class of persons entitled to a hearing under the statute.
“The Equal Protection Clause of the Fourteenth Amendment commands that no State shall ‘deny to any person within its jurisdiction the equal protection of the laws,’ which is essentially a direction that all persons similarly situated should be treated alike.” City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). “The sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.” Lehr v. Robertson, 463 U.S. 248, 265, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983) (citing Reed v. Reed, 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971)).
“In determining whether statutes violate the Equal Protection Clause, we apply different levels of scrutiny to different types of classifications. We apply ‘strict scrutiny[5] in cases involving ‘classifications based on race or national origin and classifications affecting fundamental rights.’ Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). ‘Intermediate scrutiny' traditionally applies to discriminatory classifications arising out of illegitimacy and gender. See Mills v. Habluetzel, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982); Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). A lessor level of scrutiny is ‘rational-basis scrutiny.’ Under rational-basis scrutiny, the classification must, at a minimum, be rationally related to a legitimate governmental purpose. San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).”
M.V.S. v. V.M.D., 776 So.2d 142, 151-52 (Ala.Civ.App.1999).
The complaint does not contend, nor do the plaintiffs argue on appeal, that § 26-14-7.1 involves classifications that would require applying a strict- or intermediate-scrutiny analysis. We therefore look to whether the state has a “rational basis” for any disparate treatment.
“[T]he rational-basis test is the proper test to apply to either a substantive-due-process challenge or an equal-protection challenge when neither a suspect class nor a fundamental right is involved. Gideon v. Alabama State Ethics Comm’n, 379 So.2d 570 (Ala.1980). ‘Under the rational basis test the Court asks: (a) Whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose.’ 379 So.2d at 574.
“The law is clear that a party attacking the constitutionality of a statute has the burden of negating every conceiva *974 ble or reasonable basis that might support the constitutionality of the statute. Thorn v. Jefferson County, 375 So.2d 780 (Ala.1979). Moreover, this Court will uphold a statute as long as the statute implements any rational purpose. State v. Colonial Pipeline Co., 471 So.2d 408 (Ala.Civ.App.1984). ‘[A] statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it.' 471 So.2d at 412. ‘Unless clearly and patently arbitrary, oppressive and capricious on its face, such classification is not subject to judicial review. Mere inequality under such classification is not sufficient to invalidate a statute.’ State v. Spann, 270 Ala. 396, 400, 118 So.2d 740, 743 (1959).”
Northington v. Alabama Dep’t of Conservation & Natural Res., 33 So.3d 560, 564 (Ala.2009).
In addressing an equal-protection challenge, “this Court must presume that the Act is valid and construe the Act in favor of its constitutionality.” Id. at 565 (citing Mclnnish v. Riley, 925 So.2d 174 (Ala.2005)). “ ‘ “[I]t is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.” ’ ” Id. at 564 (quoting Mclnnish, 925 So.2d at 178, quoting in turn Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). To state a claim asserting a deprivation of the right to equal protection, “a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.”[4] Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir.1992). A complaint is properly dismissed if a rational basis for the statute is conceivable or plausible. See id. (affirming dismissal of equal-protection claim when a rational basis for a city’s policy toward plaintiff was conceivable and plausible).
Section 26-14-7.1 entitles a person under investigation for child abuse or neglect an opportunity for a hearing if that person “serves as a volunteer for, holds a license or certificate for, or is connected with any facility, agency, or home which cares for and controls any children and which is licensed, approved, or certified by the state, operated as a state facility,” or is exempt from the licensing requirement for child care. We note that such persons might be more immediately adversely affected than others by an “indicated” dispo *975 sition. The state might have determined that, because of the gravity of the situation for those persons, an opportunity for a hearing is needed to minimize the risk of immediate and serious consequences resulting from an incorrect “indicated” disposition. The state could conceivably have a legitimate purpose for guaranteeing more procedural protections to persons when they are more likely to face tangible adverse effects as opposed to merely speculative effects.
Another possible rationale for differentiating between investigated persons might also be that an administrative record review might generally suffice to balance the risk of immediate and serious consequences for those persons not directly engaged in the activities listed in § 26-14-7.1. We note that DHR employees have the discretion to grant a hearing, even if the person does not fall within the listed categories.
In this case, the plaintiffs merely contend that § 26-14-7.1 does not have a rational basis or a legitimate purpose without providing any reasons for the assertion or rebuttal of its possible rational purposes. We must assume that § 26-14-7.1 is valid. Because § 26-14-7.1 has a conceivable rational basis, the plaintiffs have failed to meet their burden for stating an equal-protection claim and, thus, their right to relief § 1983. The trial court, therefore, properly dismissed count five.
III. State-Law Claims
In counts six through nine, the plaintiffs purported to assert claims against the defendants, in both their individual and their official capacities, under state law and requested compensatory and punitive damages. The complaint did not request injunctive or declaratory relief for the state-law claims, and the plaintiffs’ prayer for relief in the complaint as to those claims requests only money damages. Further, in their brief on appeal, the plaintiffs specify that “[t]he state law claims seek the recovery of money damages.”
The defendants argue that immunity operates to bar these claims against them in both their official and individual capacities. The defendants also question whether the plaintiffs sufficiently alleged that they were entitled to hearings and, thus, that they are entitled to money damages based on the failure to provide them with hearings.
A. Sovereign, or State, Immunity
“ ‘[Article I,] Section 14[, Ala. Const.1901,] provides generally that the State of Alabama is immune from suit: “[T]he State of Alabama shall never be made a defendant in any court of law or equity.” This constitutional provision “has been described as a ‘nearly impregnable’ and ‘almost invincible’ ‘wall’ that provides the State an unwaivable, absolute immunity from suit in any court.” Ex parte Town of Lowndesboro, 950 So.2d 1203, 1206 (Ala.2006). Section 14 “specifically prohibits the State from being made a party defendant in any suit at law or in equity.” Hutchinson v. Board of Trs. of Univ. of Alabama, 288 Ala. 20, 23, 256 So.2d 281, 283 (1971). Additionally, under § 14, State agencies are “absolutely immune from suit.” Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala.2003).
“ ‘Not only is the State immune from suit under § 14, but “[t]he State cannot be sued indirectly by suing an officer in his or her official capacity....” Lyons, 858 So.2d at 261: “Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State.” Haley v. *976 Barbour County, 885 So.2d 783, 788 (Ala.2004).’ ”
Ex parte Murphy, 72 So.3d 1202, 1205-06 (Ala.2011) (quoting Alabama Dep’t of Transp. v. Harbert Int’l, Inc., 990 So.2d 831, 839 (Ala.2008)).
“A complaint seeking money damages against a State employee in his or her official capacity is considered a complaint against the State, and such a complaint is barred by Art. I, § 14, Alabama Constitution of 1901.” Ex parte Butts, 775 So.2d at 177 (citing Ex parte Alabama Dep’t of Forensic Scis., 709 So.2d 455, 457 (Ala.1997)). Both Buckner, as Commissioner of DHR, and Mashégo, as Director of the Shelby County DHR, are entitled to immunity from claims for money damages asserted against them in their official capacities. See Ex parte Mobile Cnty. Dep’t of Human Res., 815 So.2d 527, 530 (Ala.2001) (holding that employees of DHR and the Mobile County DHR were entitled to immunity in their official capacities); Ex parte Trawick, 959 So.2d 51, 55 (Ala.2006) (quoting Ex parte Franklin Cnty. Dep’t of Human Res., 674 So.2d 1277, 1279 (Ala.1996), citing in turn Mitchell v. Davis, 598 So.2d 801, 806 (Ala.1992)) (‘“[A] county department of human resources is considered to be a State agency for purposes of asserting the defense of sovereign immunity.’ ”). Accordingly, the claims in counts six through nine seeking relief against the defendants in their official capacities were properly dismissed.
B. Right to a Hearing
Counts six through nine also assert a plethora of state-law claims against the defendants, in their individual capacities, based on negligence and wantonness, as well as assertions that the defendants acted “willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law,” in denying the plaintiffs’ requests for a hearing. As discussed above, none of the plaintiffs sufficiently alleged a deprivation of a constitutional right to a hearing. Thus, the plaintiffs’ right to a hearing may be found only from state regulations or statutes.
Each of the plaintiffs contended that he or she is an “aggrieved person” as that term is defined in Rule 660-1-5-.01(1) and that they were entitled to a hearing under Rule 660-1-5-.02(1), which provides that DHR is “required to provide notice and opportunity for a hearing to any aggrieved person entitled by law to be given an opportunity for a hearing when [DHR]’s action, intended action, or failure to act would adversely affect the individual’s or family’s right to assistance, benefits, or services.” Our review of the complaint reveals that none of the plaintiffs has asserted that his or her alleged placement on the registry will adversely affect his or her, or his or her family’s, right to assistance, benefits or services. Therefore, we are unpersuaded that the plaintiffs, based on their own allegations in the complaint, were entitled to receive a hearing under 660-1-5-.02(1).
However, certain persons who are under investigation for child abuse or neglect may have a right to a hearing to contest the allegations, pursuant to § 26-14-7.1 and/or Rule 660-5-34.08. Section 26-14-7.1 provides that any person who comes under investigation by DHR for child abuse or neglect and “who is employed by, serves as a volunteer for, holds a license or certificate for, or is connected with any facility, agency, or home which cares for and controls any children and which is licensed, approved, or certified by the state” may request an investigative hearing to confirm or reject the investigators’ conclusions. Rule 660-5-34.08(2) also provides a similar classification of persons with a right to a *977 hearing. Rule 660-5-84.08(3) also authorizes any person who is accused of child abuse or neglect to be afforded an administrative record review.
In the complaint, Bongers and Calhoun both claim that they were foster parents of children that DHR placed in their homes. Section 38-7-2(7), Ala.Code 1975, defines the term “child-care facility” as
“[a] facility established by any person, group of persons, agency, association, or organization, whether established for gain or otherwise, who or which receives or arranges for care or placement of one or more children, unrelated to the operator of the facility, apart from the parents, with or without the transfer of the right of custody, in any facility as defined in this chapter, established and maintained for the care of children.”
That statute further defines a “foster family home” as “[a] child-care facility in a residence of a family where the family receives a child or children, unrelated to that family, for the purpose of providing family care or therapeutic family care and training, or transitional living program services on a full-time basis.” § 38-7-2(8). At least for the purpose of evaluating the sufficiency of the complaint, both Calhoun and Bongers have sufficiently pleaded that they were entitled to a hearing pursuant to § 26-14-7.1 and Rule 660-5-35-.08(2).[5] Further, Duran alleged in the complaint that she “provided information to demonstrate that she is a person who is entitled to a hearing pursuant to § 26-14-7.1, [Ala.Code 1975].” Thus, based on the allegations of the complaint, Bongers, Calhoun, and Duran asserted that they were within the class of persons entitled to a hearing pursuant to § 26-14-7.1 and Rule 660-5-34.08. The remaining plaintiffs, Burroughs, Trammell, and Van Kleeck, did not allege in the complaint that they were within the class of persons who qualify for a hearing under the statute or the rule. Because Burroughs, Trammell, and Van Kleeck did not make that allegation, we cannot say that the trial court erred in granting the defendants’ motion to dismiss counts 6 through 9 of the complaint on the basis that Burroughs, Trammell, and Van Kleeck failed to state a claim upon which relief can be granted.
C. State-agent Immunity
The defendants also assert that they are entitled to state-agent immunity on the plaintiffs’ claims alleging negligence, wantonness, negligent and wanton failure to train and supervise, and. negligent and failure to establish policies and procedures.
“In Patton[ v. Black], this Court discussed the standard of review applicable to the dismissal of a complaint stating claims against which the defendant raised the defense[] of State-agent immunity:
“ ‘ “Where a [Rule] 12(b)(6) motion has been granted and this Court is called upon to review the dismissal of the complaint, we must examine the allegations contained therein and construe them so as to resolve all doubts concerning the sufficiency of the complaint in favor of the plaintiff. In so doing, this Court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim *978 under which he may possibly prevail.”
“ ‘... [I]t is the rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6), [Ala. R. Civ. P.].’
“646 So.2d [8,] 10 [ (Ala.1994) ] (quoting earlier cases, including Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985) (emphasis in Fontenot) (citations omitted)).”
Ex parte Butts, 775 So.2d at 177. Whether the doctrine of state-agent immunity applies “ ‘ “ ‘must be determined on a case-by-case basis, and it is a question of law to be decided by the trial court.’ ” ’ ” Suttles v. Roy, 75 So.3d 90, 99 (Ala.2010) (quoting Ex parte Sawyer, 984 So.2d 1100, 1106-07 (Ala.2007), quoting in turn Ryan v. Hayes, 831 So.2d 21, 28 (Ala.2002), quoting in turn Ex parte Davis, 721 So.2d 685, 689 (Ala.1998), and citing Lightfoot v. Floyd, 667 So.2d 56, 64 (Ala.1995), for the proposition that “ ‘[t]he question whether a public official is entitled to qualified immunity is one to be decided as a matter of law.’ ”).[6]
Our supreme court has set forth a test for determining when state-agent immunity applies to a defendant sued in his or her individual capacity:
“ ‘A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“ ‘(1) formulating plans, policies, or designs; or
‘“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“‘(a) making administrative adjudications;
“ ‘(b) allocating resources;
“ ‘(c) negotiating contracts;
“‘(d) hiring, firing, transferring, assigning, or supervising personnel; or
“ ‘(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; ...
[[Image here]]
“‘Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“ ‘(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“‘(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.’ ”
Ex parte Butts, 775 So.2d at 177-78 (quoting Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000)).
*979 Counts six through nine of the complaint assert state-law claims of negligence and wantonness. In count six and count seven, Duran, Calhoun, and Bongers contend that the defendants negligently denied them a hearing. In count eight, Duran, Calhoun, and Bongers allege that the defendants negligently failed to train DHR and Shelby County DHR staff on the proper manner to review and respond to requests for hearings under the pertinent regulations and statutes. In count nine, Duran, Calhoun, and Bongers allege that the defendants failed to establish policies and procedures for DHR and the Shelby County DHR to follow regarding hearings required by the pertinent statutes and regulations. As to each of those counts, Duran, Calhoun, and Bongers stated that the defendants did not have discretionary authority to deny, refuse, or ignore the hearing and that the defendants acted “willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law” in denying them a right to a hearing. Duran, Calhoun, and Bongers stated in the complaint that DHR informed them only of a right to an administrative record review and not to a hearing.
In support of the allegations that the defendants acted “willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law,” Duran, Calhoun, and Bon-gers asserted the following in their complaint:
“75. Nancy Buckner, as the current Director of the State of Alabama Department of Human Resources and Kim Mashego as the current Director of the Shelby County Department of Human Resources have established a custom, practice or policy which has resulted in the denial of the written request for a hearing and has resulted in the plaintiffs’ names and information continuing to be listed on the Central Registry. As a result of that custom, practice or policy, the State Department of Human Resources and the Shelby County Department of Human Resources routinely and systematically deny written requests for a hearing following notification of an ‘indicated disposition’:
“(i) Upon receipt of written request for a hearing, the State Department of Human Resources and the Shelby County of Department Human Resources systematically fails/refuses to schedule a hearing as is required of them by previously recognized law and by rule and regulation promulgated and established by DHR in the Administrative Code.
“(ii) Written requests for hearings are systematically denied or ignored and the requestor is systematically informed that they are only entitled to a ‘record review*. DHR systematically fails and/or refuses to comply with their own administrative rules and regulations requiring DHR to explain those methods by which the indicated disposition may be handled. DHR systematically misrepresents facts in letters informing of an ‘indicated disposition’ by failing/refusing to inform that a review of the disposition may be handled by conference, review or hearing. DHR systematically fails to inform that the right to a hearing exists even while the record review is undertaken.
“(in) [The defendants] have failed to properly train and supervise workers in the lawful and proper method of communicating the information about the methods by which a disposition may be challenged.
“(iv) [The defendants] have failed to train and supervise workers in the *980 proper and lawful method of investigating and determining who is entitled to a hearing pursuant to Section 26-14-7.1, Code of Alabama, 1975 as amended. As a result, workers are making false, untrue, inaccurate and misleading communications following an indicated disposition.
“(v) DHR systematically affirms the original disposition of ‘indicated’ following the completion of a record review.
“(vi) [The defendants] have failed to promulgate rules and/or establish adequate policies necessary in order to correct the custom, practice or policy that now results in systematic denial of hearing requests and the routine affirmance of indicated dispositions.
“(vii) As a result of [the defendants’] wrongful conduct, action and inaction as complained of herein, DHR routinely introduces evidence of the ‘indicated disposition’ in cases brought before the juvenile/family courts of the State; and, did so in those Juvenile Court cases involving the plaintiffs.
“(viii) As a result of [the defendants’] wrongful conduct, action and inaction as complained of herein, DHR has failed and refused to comply with and obey that previously recognized State law and those rules and regulations promulgated and established by DHR for the purpose of providing Due Process and pre-deprivation hearings.
“(ix) These systemic failings, which proximately result from [the defendants’] wrongful conduct, action and inaction as complained of herein have resulted in a flawed and unlawful system whereby Due Process has been denied to plaintiffs after receiving notice of the ‘indicated disposition’; and, that same flawed and unlawful system results in a high confirmation rate following record review; and, that same flawed and unláwful system allows DHR to introduce the ‘indicated disposition’ in those cases which DHR brings before the juvenile/family courts of the State.
“(x) DHR has maintained this flawed and unlawful system while receiving Federal funds/grants; and, DHR is mandated, as recipient of the same, to implement policies and procedures to afford due process.
“(xi) As a result of [the defendants’] wrongful conduct, action and inaction as complained of herein, DHR has failed to establish procedures allowing for the prompt expungement of names and information from the Central Registry.
“(xii) Unless or until the systemic deficiencies described hereinabove are corrected, plaintiffs will continue to be stigmatized and labeled as child abusers as a result of continued listing on the Central Registry; and, plaintiffs’ rights and/or status as previously recognized by State law has been distinctly altered or extinguished; and, those plaintiffs who were informed of a not indicated disposition will have no method by which they can petition to remove the listing prior to the expiration of five years from the date of the listing.
“76. Plaintiffs further contend that defendant Buckner, in her official capacity as Director of the Alabama Department of Human Resources, and defendant Mashego, in her official capacity as Director of the Shelby County Department of Human Resources, have failed to implement and establish policies and procedures necessary for the purpose of providing adequate training to those *981 agents and employees of the State and County Departments who are responsible for the investigation of child abuse/neglect reports and who are responsible for making disposition of those reports, and who are responsible for informing person of their rights following an ‘indicated disposition’. This failure has led to a flawed and unlawful system whereby the State and County Departments routinely and systematically conduct investigations irresponsibly and negligently/wantonly and the results of the same are arbitrary, flawed, inconsistent, erroneous and false and not based on credible evidence or supported by credible evidence.
“77. The wrongful action and conduct of the defendants as complained of herein represents deliberate indifference to the known risk that the plaintiffs’ due process rights will be violated when plaintiffs’ names and information are placed onto the Central Registry prior to a pre-deprivation hearing that allows for due process of law; and, the wrongful actions and conduct of the defendants as complained of herein have significantly altered plaintiffs’ status as a matter of State law; and the wrongful acts and conduct of the defendants as complained of herein has altered or extinguished a right or status previously recognized by State law, which, when coupled with the stigma resulting from the ‘indicated disposition’ has caused irreparable harm and injury to the plaintiffs.
[[Image here]]
“80. The defendants acted intentionally to deprive plaintiffs of their rights under State law, the State and Federal Constitutions; or, in wanton and reckless disregard of those rights.
“81. The defendants’ actions constitute an extreme departure from the ordinary standárd of care and are evidence of a conscious and deliberate indifference to plaintiffs’ rights under the laws of the State of Alabama and the State and Federal Constitutions.
“82. Plaintiffs have suffered, and continue to suffer, substantial harm as a result of the wrongful conduct and actions complained of herein, including, but not limited to, emotional distress, pain and suffering and injury to their reputation.
“83. [The defendants] have a duty to train [DHR’s and Shelby County DHR’s] employees and agents so that those employees could distinguish between lawful and unlawful decisions. [The defendants] failed to train employees/agents and failed to train those employees/agents who conducted the investigation and who used professional judgment in making a disposition and who communicated with plaintiffs regarding the disposition, the methods by which the disposition could be addressed and the plaintiffs’ request for a hearing.
“86. [The defendants] ... had actual knowledge of the actions complained of herein; and, knew that the denial of the hearing request(s) was a violation of State law and [DHR’s] rules and regulations ....
“87. [The defendants] ratified, adopted and approved the wrongful acts complained of herein; and, as such, acquiesced in the decision(s) to deny the hearing request....
“88. The deliberate indifference complained of herein was a direct and proximate result of plaintiffs’ injuries and damages.”
The allegations that the defendants had a duty to train and supervise employees and that the defendants had a duty to establish policies and procedures are not supported in the complaint, or in *982 the plaintiffs’ brief on appeal, by any citation to authority establishing those duties. Duran, Calhoun, and Bongers cite generally to § 38-2-3, Ala.Code 1975, which provides that the chief executive officer of DHR shall be the Commissioner of DHR. They also cite to § 38-2-8, which provides that each county department of human resources shall have a county director. In their brief on appeal, Duran, Calhoun, and Bongers contend that “[t]he Commissioner and the County Director are responsible for implementing and enforcing policies and procedures, rules and regulations of the State Department and the County Department.” Nowhere in the complaint or in the brief is this contention supported by citation to authority. Because Duran, Calhoun, and Bongers cannot provide a basis for establishing that the defendants had the legal duties alleged in counts eight and nine, we affirm the trial court’s judgment dismissing those counts. See Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (“This court will address only those issues properly presented and for which supporting authority has been cited.”); White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008) (“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.”).
As to counts six and seven, regarding the defendants’ alleged acts depriving them of a hearing, Duran, Calhoun, and Bongers alleged that the purported actions of the defendants were willful, malicious, fraudulent, in bad faith, and/or under a mistaken interpretation of the law. In paragraph 80 of the complaint, Duran, Calhoun, and Bongers contended that the defendants had acted “intentionally” or in “wanton and reckless” disregard in denying their right to a hearing. In paragraphs 86, 87, and 88 of the complaint, Duran, Calhoun, and Bongers alleged that the defendants had actual knowledge of the denial of their requests for a hearing, that the defendants “approved of’ and “acquiesced in” the hearing denials, and that the defendants’ “deliberate indifference” in participating in the decisions to deny the hearings was the proximate cause of their injuries. Essentially, Duran, Calhoun, and Bongers are alleging that the defendants were personally involved with the decisions to deny their requests for a hearing and that the defendants’ actions were willful, malicious, fraudulent, in bad faith, beyond the defendants’ authority, or under a mistaken interpretation of the law, i.e., that they fall within the exceptions to state-agent immunity.
As discussed above, one of the exceptions to state-agent immunity is “ “when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.’ ” Ex parte Butts, 775 So.2d at 178. Thus, for purposes of analyzing the dismissal of these counts as they relate to Calhoun, Duran, and Bon-gers, to the extent that Calhoun, Duran, and Bongers assert that the defendants’ actions were willful, malicious, fraudulent, in bad faith, beyond their authority, or under a mistaken interpretation of the law, “[the defendants have] not shown[] that [they have] a clear legal right to a dismissal of any of these state-law claims on the basis of state-agent immunity.” Ex parte Alabama Dep’t of Youth Servs., 880 So.2d 393, 405 (Ala.2003). Our decision as to this issue does not assess the merits or credibility of the allegations but only their sufficiency, and our decision does not preclude further assertion of state-agent immunity upon proper motion supported with evidence. See, e.g. Ex parte Butts, 775 So.2d at 178 (“After the parties have had the opportunity to conduct discovery, the *983 employees will have the opportunity to seek a summary judgment on the ground that they are entitled to State-agent immunity.”). The negligence and wantonness claims asserted by Duran, Calhoun, and Bongers in counts six through nine, however, cannot be sustained because, based on the allegations in the complaint, the defendants have state-agent immunity as to those particular claims.

Conclusion

Accordingly, we affirm the trial court’s judgment dismissing counts one through five of the complaint asserting § 1983 claims and dismissing all the state-law claims asserted against the defendants in their official capacities. We also affirm the dismissal of all the claims asserted by Burroughs, Trammell, and Van Kleeck in counts six through nine. Additionally, we affirm the dismissal of the negligence and wantonness claims asserted by Duran, Calhoun, and Bongers in counts six through nine and the dismissal of the claims asserted by Duran, Calhoun, and Bongers against the defendants in their individual capacities as to the claims alleging conduct that was allegedly willful, malicious, fraudulent, in bad faith, beyond their authority, or under a mistaken interpretation of the law in counts eight and nine. However, we reverse the dismissal of the claims asserted by Duran, Calhoun, and Bongers against the defendants in their individual capacities as to the claims alleging conduct that was allegedly willful, malicious, fraudulent, in bad faith, beyond their authority, or under a mistaken interpretation of the law in counts six and seven and remand the case to the trial court for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. DHR may also use "unable to complete” as a disposition if it is unable to obtain the information to reach an "indicated” or "not indicated” disposition.

. The complaint has two successive counts with headings labeled "Count Eight.” We refer to the first of these counts as "count eight” and to the second of these counts as "count nine.”

. On appeal, the plaintiffs argue that § 26-14-7.1 violates the United States Constitution and the Alabama Constitution of 1901. In Ex parte Melof, 735 So.2d 1172, 1181, 1186 (Ala.1999), our supreme court stated that the Constitution of Alabama of 1901 contains no Equal Protection Clause and Alabama does not have an equal-protection provision equivalent to that in the 14th Amendment of the United States Constitution. Although it has been questioned whether those statements are holdings in the case, any state equal-protec *973 tion claim is subject to the same analysis as a federal equal-protection claim. Dyas v. City of Fairhope, (Civil Action No. 08-0232-WS-N, Dec. 30, 2010) (S.D.Ala.2010) (not reported in F.Supp.2d). Accordingly, we construe all the plaintiffs’ equal-protection claims pursuant to the analysis applicable to a federal equal-protection claim. See Plitt v. Griggs, 585 So.2d 1317, 1324-25 (Ala.1991) (applying analysis applicable to federal equal-protection claim to a state equal-protection claim).

. The United States Court of Appeals for the Seventh Circuit provided the following explanation for reconciling the rational-basis standard with the standard for reviewing a motion to dismiss for failure to state a claim:
"A perplexing situation is presented when the rational basis standard meets the standard applied to a dismissal under Fed. R.Civ.P. 12(b)(6). The rational basis standard requires the government to win if any set of facts reasonably may be conceived to justify its classification; the Rule 12(b)(6) standard requires the plaintiff to prevail if 'relief could be granted under any set of facts that could be proved consistent with the allegations.’ Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). The rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard. The latter standard is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim.
"While we therefore must take as true all of the complaint’s allegations and reasonable inferences that follow, we apply the resulting 'facts’ in light of the deferential rational basis standard. To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.”
Wroblewski v. City of Washburn, 965 F.2d 452, 459-60 (7th Cir.1992).

. The defendants concede in their brief on appeal that Bongers arguably falls within the provisions of § 26-14-7.1.

. We note that a trial court determines whether state-agent immunity applies under a “burden-shifting” process. Suttles, 75 So.3d at 99. If a defendant demonstrates that " 'the plaintiff’s claims arise from a function that would entitle the State agent to immunity.... the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.’ ” Id. (quoting Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006)). However, when, as in this case, no evidence has been submitted to the court, a court reviews only the pleadings for sufficiency in stating a claim.